# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JEANETTE BURTON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| GUARDIAN LIFE INSURANCE | ) |
| COMPANY OF AMERICA, | ) |
| | ) |
|     Defendant. | ) |

## **COMPLAINT**

COMES NOW Plaintiff, Jeanette Burton, and for her claims and causes of action against Defendant, Guardian Life Insurance Company of America, states as follows:

## PARTIES

1. Jeanette Burton ("Burton") is a resident and citizen of the State of Missouri.

2. Defendant Guardian Life Insurance Company of America ("Guardian") is an out-of-state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of Guardian.

## JURISDICTION AND VENUE

3. Burton brings her claim pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq.*

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in the Western District of Missouri under 29 U.S.C. § 1332(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

## STATEMENTS OF FACT

9. Since 2003 Burton was employed by New York Blood Center dba Community Blood Center of Greater Kansas City ("CBC").

10. CBC employed Burton as a Supervising Phlebotomist.

11. CBC sponsored a group welfare benefits plan for its participating employees ("Plan").

12. The Plan constitutes employee welfare benefit plans as defined by 29 U.S.C. § 1002 (1).

13. The Plan offered short-term disability ("STD") and long-term disability ("LTD") benefits to its participating employees.

14. At all relevant times, Burton has been a participant and covered person under the terms of the Plans.

15. CBC is the administrator of the Plan.

16. CBC delegated or attempted to delegate the function of issuing STD and LTD benefit claim determinations to Guardian.

17. CBC and Guardian entered into an administrative services contract through which CBC paid Guardian for acting as claims administrator.

18. The Plan and Policy articulate the conditions under which a Plan Participant is entitled to LTD and STD benefits.

19. The LTD Plan defines Disability or Disabled as follows:

> **Disability or Disabled:**
>
> These terms mean that a current Sickness or Injury causes impairment to such a degree that You are:
>
> - Not able to perform, on a Full-Time basis, the material and substantial duties of Your Own Occupation during the Elimination Period and the Own Occupation period.
> - Not able to perform, on a Full-Time basis, the material and substantial duties of any Gainful Work after the end of the Own Occupation period.

20. During Burton's employment, she became unable to perform the duties of her job due to a combination of physical conditions.

21. Burton suffers from a combination of impairments precipitated by SARS-CoV-2 ("Covid"), including chest pain, shortness of breath and dyspnea, chest pains, stumbling, falling, lightheadedness, brain fog, obstructive sleep apnea, anemia, Gastroesophageal Reflux Disorder, and lapses in her awareness and critical thinking skills. These conditions created restrictions and limitations that were incompatible with the material and substantial duties of her occupation.

22. On September 29, 2020, following a positive Covid test Burton officially worked her final day for CBC.

23. Due to her conditions, Burton was forced to cease work. Her last day of work was October 29, 2020.

24. Following her leave from work, Burton applied for STD benefits, which Guardian paid in full.

25. Following the STD benefits exhaustion, Burton applied for LTD benefits.

26. On November 19, 2020, Burton's echocardiogram reported an ejection fraction of 56%.

27. On November 24, 2020, Burton underwent a CT scan that evidenced pulmonary infiltrates ground glass.

28. On May 11, 2021, Burton underwent an x-ray that appeared to show no evidence of infiltrates; however, Burton was repeatedly advised by her doctor that x-rays are not the ideal imaging and was advised that she should schedule a CT scan. Burton's insurance repeatedly denied her doctors requests for a CT scan.

29. On May 30, 2021, Burton underwent a blood test with results of hyperglycemia and abnormal liver function.

30. On July 09, 2021, Guardian denied Burton's LTD application.

31. Both ERISA and the Policy itself require such denials to provide specific information, including:

    a. The specific reason(s) the claim was denied.

    b. Specific reference to the Policy provision(s) on which the denial was based.

    c. Any additional information required for the claim to be reconsidered, and the reason this information is necessary.

    d. If the case of any claim for a disability benefit, identification of any internal rule, guideline or protocol relied on in making the claim decision, and an explanation of any medically-related exclusion or limitation involved in the decision.

e. A statement regarding the right to appeal the decision, and an explanation of the appeal procedure, including a statement of the right to bring a civil action under Section 502(a) of ERISA if the appeal is denied.

32. On December 02, 2021, Burton requested a copy of her claim file from Guardian.

33. Guardian did not confirm receipt of this request.

34. On December 09, 2021, Burton received treatment from speech pathology due to the degradation of her cognitive communication. Speech Pathologist Leigh Ann Porter, MA, CCC-SLP, opined that Burton's deficits "impact her ability to effectively function in the home, community, and impact her performance in a business setting."

35. On December 13, 2021, Burton requested an extension of time to submit her appeal.

36. On December 16, 2021, Guardian produced the claim file.

37. Review of the claim file revealed irregularities in Guardian's claim process.

38. Guardian failed to have Burton's case reviewed by a licensed physician.

39. Guardian failed to request an independent medical review, or other examination by a physician, choosing instead to refer Burton's case to Guardian's Nurse Case Manager, and Behavioral Case Manager.

40. Guardian additionally failed to accurately determine if Burton was able to perform each of the material and substantial duties of her occupation.

41. On January 20, 2022, Burton appealed Guardian's denial.

42. On March 30, 2022, Guardian requested additional information from Dr. Carmen Ford, one of Burton's treating providers.

43. On April 8, 2022, Guardian provided the status of Burton's claim, stating, "as part of our reconsideration review, your file was referred to a Guardian Registered Nurse Case Manager for review." and advising the claim had been tolled an additional 45 days.

44. On May 10, 2022, Guardian produced a Peer Review performed by Dr. Joshua Lewis and requested a response in 10 days.

45. Burton responded to Dr. Lewis's Peer Review.

46. On June 3, 2022, Guardian denied Burton's appeal.

47. Burton has at all relevant times met the definition of "Disability or Disabled" under the Plan and is entitled to benefits.

48. Burton has exhausted her administrative remedies.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

49. Burton realleges the preceding paragraphs as if fully set forth herein.

50. Burton is entitled to all unpaid and accrued LTD benefits, as Guardian:

   a. Made an unfavorable decision without substantial evidence;

   b. Failed to properly consider Burton's medical impairments and resulting limitations; and

   c. Issued an unfavorable decision that was arbitrary and capricious.

51. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Burton is entitled to an award of actual damages for losses suffered.

52. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

6

53. Guardian has not satisfied its obligation to pay Burton's LTD benefits.

54. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Burton prays for judgment against Guardian for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

## COUNT II
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

55. Burton realleges the preceding paragraphs as if fully set forth herein.

56. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property or such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

57. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

> "a fiduciary shall discharge her duties with respect to a plan solely in the interest of the participants and beneficiaries and – for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

58. Guardian, the Plan's designated claims administrator, is a fiduciary.

59. Burton participated in and benefitted from the Plan as previously indicated.

60. Guardian's claims management practices are motivated by financial incentives in its administrative services agreement with CBC.

61. As the payor of benefits and the entity responsible for exercising discretion in claims administration, Guardian operates under an inherent conflict of interest.

62. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs the actions of a fiduciary.

63. Guardian breached its fiduciary duty in:

    a. Failing to comply with its internal guidelines and claims handling procedures. Its claim handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations; and

    b. Refusing to utilize fully executed authorizations to attempt to obtain evidence relevant to Burton's claim for benefits.

64. Guardian denied Burton's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

65. Guardian failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with a conflict of interest and breached its fiduciary duty to both Burton and the Plan's participants and beneficiaries generally.

66. Guardian's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

67. Guardian's violations of regulations alone allow Burton the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

68. Guardian's violations of federal regulation also subject its decision to *de novo* review.

69. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Burton prays for an order that Guardian retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Guardian in its fiduciary capacity; for an equitable accounting of benefits that Guardian has withheld; for the disgorgement

of profits enjoyed by Guardian in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

        Respectfully submitted,

        BURNETTDRISKILL, Attorneys

        By: /s/ Derrick A. Pearce
        Derrick A. Pearce, Mo. # 42793
        Kyle H. Sciolaro, Mo. # 64568
        Paul J. Taylor, Mo. # 72159
        103 W 26th Ave., Ste. 290
        North Kansas City, MO 64116
        P: 816.883.4142
        F: 816.792.3634
        dpearce@burnettdriskill.com
        ksciolaro@burnettdriskill.com
        ptaylor@burnettdriskill.com
        ATTORNEYS FOR PLAINTIFF